## MASTER and WARDENS of N. ORLEANS *v.* SHIP M. HAWES et al.

The act of March 31st, 1805, authorizing the harbor-master and wardens, *when called upon*, to proceed to the survey of vessels and damaged goods, imposes neither a toll nor tax of any kind whatever, and is not unconstitutional; and, where services are performed under the act, the obligation to pay for them is one of contract.

APPEAL from the Fourth Justice of the Peace of the parish of Orleans, *Derbes;* J. P. *Barton* and *Soulé,* for plaintiffs. *Hite* and *Gaither,* for defendants. The judgment of the court was pronounced by

EUSTIS, C. J. This appeal is taken by the defendants from a judgment rendered against them for the sum of forty-five dollars in the court of the Fourth

Justice of the Peace of New Orleans. The plaintiff filed in the court below an account against the ship, her captain and owners, on which the suit was brought. The first item of this account is, for fees for services rendered as surveyors of the ship whilst in a damaged condition, $35; the second is, for ordering, directing and attending the sale of damaged copper, hawsers and rope, taken from the ship, at public auction according to law, $10.

The appeal is taken under the 63d article of the Constitution, which gives the right of appeal to this court, without reference to the amount in dispute, in all cases in which the constitutionality or legality of any tax, toll or impost of any kind or nature whatsoever shall be in contestation.

The question first to be determined is, as to the right of the parties defendant to appeal. The offices of harbor-master and port-wardens of the port of New Orleans were organized by the act of March 31st, 1805. By an act of the 8th of March, 1841, the first section of that act and all other acts providing for the office of harbor-master were repealed, so far as they related to the creation of said office; but the rest of the original act of 1805 remained in force. Under the 11th section of that act, the plaintiffs' claim against the defendants is asserted. The section provides " that the said master and wardens or any one of them shall, if called upon by the person commanding any ship or vessel arriving from sea, inspect the manner in which the hatches of such ship or vessel were secured, previous to the opening thereof for the purpose of discharge, and shall be present at the opening of the same, and shall upon every such survey certify under his hand how the said hatches appeared to him; for which certificate he shall be entitled to two dollars, and for every duplicate thereof, to one dollar; and the master and wardens, or any two of them, shall be surveyors of damaged goods brought into the port of New Orleans in any ship or vessel, and, with the assistance of one or more skillful carpenters, shall be surveyors of any damaged vessel and any vessel deemed unfit to proceed to sea; and they shall, upon every such survey, certify under their hands how the vessel so surveyed appeared to them, and shall cause entries to be made in a book to be kept for that purpose in their office; and for each certificate and entry they shall be entitled to two dollars, and for every duplicate thereof, to one dollar; and the said wardens shall severally be entitled, for their services as surveyors of damaged goods or vessels, at the rate of two dollars and fifty cents per day: and further, it shall solely belong to the said master and wardens, or any two of them, to order and direct the sale of damaged goods by public auction, giving notice of such public sale at least two days before, in French and English, in two newspapers published in this city, and at least two of said wardens shall be present at such public sale, and shall certify to the truth of the account of sales of the auctioneer by whom such damaged goods shall be sold; and for such attendance and certificate shall be entitled to the sum of ten dollars."

This statute, which was passed by the Legislative Council of the former territory of Orleans, like all laws emanating from that body, bears the stamp of its origin. The language is plain, simple and appropriate. It provided for the police of the port, and for the appointment of a harbor-master, port-wardens and pilots; assigning to them such duties as were properly to be exercised under the local territorial authority. It received the sanction of the Congress of the United States, and must be considered as having the authority of a law of the United States.

The section which we have quoted is one sentence; the sense appears to be continuous and uninterrupted, and qualified throughout by the proviso at the

beginning. The said master or wardens, or any one of them, shall, if called <span style="float:right">Master and Wardens<br>v.<br>Ship<br>M. Hawes.</span> upon by the person commanding any ship or vessel arriving from sea, inspect &c., be surveyors &c., certify &c.: and further, it shall solely belong to said master and wardens, or any two of them, to order and direct the sale of damaged goods by public auction. We take this to mean that they have the sole right to order and direct the sale of damaged goods by public auction in the case provided in the section; that is, when called upon by the person commanding any ship or vessel arriving from sea. This construction gives us a wise law; one strictly constitutional, and necessary in a sea port for the protection and guide of masters of ships, who are called upon in cases of accident or disaster to exercise great discretionary power as to the property confided to their care. Abbott on Shipping, 365, 367, cases in notes. The construction that would isolate this provision from its controlling clause would give a power to this class of officers over the property accidentally, and from misfortune within their reach, sent to our shores under the safeguard of the Constitution, which we know from the cautious and wise legislation of the late Council of the territory, never would have been conferred knowingly by that body, or have received the sanction of the general government. Such a construction we cannot for a moment admit.

The statute presents solely a matter of contract; neither a tax, a toll, nor an impost of any kind or nature whatsoever purports to be imposed or is in contestation between the parties. The amount in dispute not exceeding three hundred dollars, this court has no jurisdiction of the case.

The appeal is therefore dismissed, with costs.